THE STATE OF KANSAS, *Appellee,* v. JOHN HAMMON, *Appellant.*

No. 17,066.

### SYLLABUS BY THE COURT.

JURY AND JURORS—*Opinions—Error in Overruling Challenge Immaterial—Admissions by Defendant.* The appellant, a hack driver, called about midnight for two traveling men, and while in the building two girls, L and P, under eighteen, entered the hack. The two men entered and the four were driven by appellant for about twenty minutes, during which time one of the men, V, committed rape upon one of the girls, L. She claims she called to appellant to let the girls or the men out, but it does not appear that he responded to the call. After the two men left the hack appellant permitted the two girls to remain therein several hours, and finally landed them at a hotel, giving them money to pay for a room. V and appellant were informed against at the same time, one for rape upon L and the other for rape upon P, the same date being laid in each information and the names of the same witnesses indorsed on each. V was tried November 6, 1909, when appellant's trial was postponed upon his application. V was convicted of the offense charged. The two girls testified in his case, and L exhibited to the jury an undergarment, claimed to have been worn by her when the offense was committed by V and claimed to have blood spots caused by its commission. Two doctors testified as to an examination of L and that the offense had been committed. The appellant was tried November 29, and over his objection

five of the jurors in V's case were permitted to sit in the trial of appellant, several of them after he had exhausted his peremptory challenges. *Held*, error, but owing to his admissions upon the stand, his conviction being for an attempt only, the error is not substantial, and the judgment is affirmed.

Appeal from Sedgwick district court. Opinion filed February 11, 1911. Affirmed.

*John W. Adams,* and *George W. Adams,* for the appellant.

*Fred S. Jackson,* attorney-general, *W. A. Ayres,* county attorney, and *George McGill,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.: The appellant was a hack driver at Wichita, and on the night in question called about midnight at a certain house for two traveling men, who entered his hack. Two girls, each under eighteen years of age, were standing near when the hack stopped, and either of their own accord or upon appellant's invitation entered the hack, whereupon the four were driven a few blocks, occupying about twenty minutes' time, during which one of the traveling men, V, committed a rape upon one of the girls, L. After the two men left the hack appellant drove the girls for some time, finally going some distance for a passenger, who rode back to the hotel with them, and about three or four o'clock he left them at a hotel, where he claims they desired a room, he giving them a dollar to pay therefor on their assertion that they had no way of paying for lodging, their claim being that he merely gave or handed them the dollar. It is clear that the girls remained in the hack three or four hours after the offense was committed by V, and it is claimed by appellee that during this time appellant induced L to get

upon the hack, whereupon he went inside and committed the offense charged upon the other girl, P.

V and appellant were informed against at the same time for rape, the offenses both being laid on the same day. The witnesses indorsed on both informations were identical. V was tried November 6, 1909, appellant's case being postponed on his own application until a later date and tried on November 29. L testified in the case against V, and produced a pair of drawers claimed to have been worn by her when the offense was committed by V and on which it was claimed that there were blood spots caused by its commission. She testified that she and P were in the hack drawn by appellant about 11:30, when two traveling men entered, and that appellant drove them several blocks, occupying about twenty minutes' time, during which time the offense was committed by V, that she called to appellant to stop the hack and let the girls or the men out, and that appellant had invited the girls into the hack. P testified substantially the same, and two doctors gave evidence that they had examined L and found that the alleged character of offense had been committed upon her. P testified that on South Tremont street appellant got into the hack with her and that L got upon the hack. Another witness said that he had ridden on the morning in question from the Lenox sanitarium to the Carey hotel in a hack in which there were two girls. V was convicted of the offense charged.

Upon the trial of appellant five jurors who had sat in the trial of V were permitted to sit, over the objection of appellant, and after vigorous but fruitless efforts to exclude them on the ground that they were disqualified by reason of what they had seen and heard as jurors in the other case. Each testified, however, that he had no opinion as to appellant's guilt or innocence, and knew of no reason why he could not sit as a fair and impartial juror. The court rigorously excluded all questions touching what the jurors had seen

and heard in the trial of V, it being manifest that the offense committed by V was several hours prior to the time appellant entered the hack and was charged with having committed the offense upon P.

It is urged with much force that appellant has not been accorded a trial by a fair and impartial jury, and that it was error to permit these five jurors to sit in his case. It seems from the abstracts that a number of them, at least, were challenged after appellant had exhausted all his peremptory challenges. Other complaints are made, but we regard this as the only one demanding our attention.

It must not be forgotten that the two alleged offenses were several hours apart, by different defendants, upon different victims, and there is no vital connection between the two. But it must be remembered, also, that both occurred in appellant's hack, driven by him, and the two girls remained therein before, during, and after the commission of both offenses, save the change of place from the inside to the outside by L, as claimed by appellee; that it was proven, or at least testified, that L called to appellant to let the girls or the men out; that he finally landed them at three or four o'clock in the morning at a hotel, and gave them money to pay for a room, and that the garment worn by L was exhibited before, and the testimony of the two physicians was heard by, these jurors in the trial of V.

That their minds, after finding V guilty of rape upon the testimony of the identical witnesses whose names were indorsed upon the information against appellant, were in condition fairly and impartially to sit in the trial of appellant upon a similar charge, on the same night, in a continuation of the same drive, in the same hack, we can hardly believe. Answers by these jurors to categorical questions, though doubtless intended to be truthful, are less convincing than the known nature and tendency of the human mind.

We are cited to cases in which this and other courts have gone far in upholding the competency of jurors who had an opinion concerning some conceded or known essential fact or facts, or who had heard unsworn statements concerning the commission of the alleged crime without coming to any conclusion or opinion as to the guilt of the person charged, or concerning similar but disconnected offenses by the same person; and in fairness to the able and learned trial judge it should be said that numerous authorities may be found which support or strongly tend to support the ruling now complained of; but we believe the spirit, at least, of the statutes and decisions of this state, as well as the decisions in numerous other states, calls for a different ruling.

It might have been possible to try appellant without going back to the time when the girls entered the hack, and without reference to the offense of V, but it would have been impracticable, and it was not done in this case, as the record plainly shows; and going back, as this trial did, almost if not entirely of necessity to the beginning of the drive, it might be said that to quite a material extent the trial of appellant was a retrial of V, so connected and mingled were the two offenses and the facts and circumstances surrounding them. Five of the jury could not help realizing that here were the same hack, the same driver, the same ride, or a continuation thereof, the same girls, the same witnesses they had considered and heard in the other case, and it is too much to expect jurors under such circumstances to be free from bias and prejudice, having already convicted on the testimony of the same witnesses another inmate of the same hack in the early part of the same drive.

Section 10 of the bill of rights guarantees a trial by an "impartial jury." Sections 202, 203 and 205 of the code of criminal procedure, and 208 in connection with section 282 of the code of civil procedure, provide in

substance that a suspicion of prejudice, service on the grand jury which returned the indictment, the previous formation or expression of an opinion on the issue of any material fact to be tried, or having formerly been a juror in the same case, may be good ground for challenge, the validity of the cause first mentioned to be determined by the court.

In *Weeks v. Medler*, 20 Kan. 57, it was held that to bring one within the ground of having formerly been a juror in the same action it is not essential that the cause shall have been at such former time fully tried or the jury discharged for failure to agree. "It is enough if the case has been partially tried, and a portion of the testimony received." (p. 63.) The spirit, if not the letter, of this decision is against the propriety of permitting the five challenged jurors in the case of V to sit in the trial of appellant.

In *The State v. Otto*, 61 Kan. 58, in a prosecution for larceny of cattle, it was held a good ground of challenge that a juror had an opinion that the defendant had taken stolen cattle to market, this being a material question in the case. It was there said:

"It is the duty of the court, imposed both by statute and by the principles of natural justice, to stand as a vigilant guard over the jury box, to the end that bias, prejudice and preconceived opinion do not enter." (p. 63.)

In 24 Cyc. 278, 279, the rule is thus stated:

"A juror is not incompetent because he has previously tried a case of the same character and involving the same general considerations, or where the second case is brought on different grounds to be established by different evidence; but where they arise out of the same transaction and involve the same issues or are to be determined upon the same evidence the juror is incompetent; and if practically the same question is to be again decided it is immaterial whether only the same or other and additional witnesses are to be examined. So, also, if during the continuance of a case any of the jurors are impaneled and render a verdict in another

The State v. Hammon.

case in which the same issues are involved, they are not competent to proceed with the trial of the first case. . . . But on the other hand it is held that a juror is incompetent if he has served upon the trial of another defendant charged with the same identical offense involving the same transaction, or a different offense growing out of the same transaction and involving the same facts and circumstances, or where any of the material issues in the case on trial were considered and passed upon at the former trial, and this notwithstanding the juror states that he has formed no opinion as to defendant's guilt and can try the case impartially."

In *Wickard v. The State,* 109 Ala. 45, it was held that on the trial of an indictment for playing and betting at a game of cards or dice the defendant is entitled to challenge for cause jurors who had sat upon the trial of another person convicted during the same term of court of a like offense, at the same house, within the same period, at which defendant was charged to have played and bet.

In *Lewis v. State,* 118 Ga. 803, the court said:

"That jurors should be impartial is of the very essence of a fair trial by jury. If they have already taken part in the trial of other persons implicated in the offense of which the defendant is charged, they have almost necessarily received an impression either for or against him." (p. 804.)

In *Baker v. Harris,* 60 N. C. 277, it was held that an action brought by C against B for fraudulently removing a debtor was not properly triable by jurors who had sat in a case of the same sort brought by A against B. The court said:

"It is not in the nature of man, even in the most conscientious of the race, to devest himself altogether of prepossession or bias in favor of a judgment so solemnly formed; and it is difficult to perceive how the bias can be less in the special case before us than in the case of a juror called to try the same case a second time." (p. 280.)

In *Mima Queen and Child v. Hepburn*, 7 Cranch (11 U. S.) 290, Mr. Chief Justice Marshall said:

"It is certainly much to be desired that jurors should enter upon their duties with minds entirely free from every prejudice. Perhaps on general and public questions it is scarcely possible to avoid receiving some prepossessions, and where a private right depends on such a question the difficulty of obtaining jurors whose minds are entirely uninfluenced by opinions previously formed is undoubtedly considerable. Yet they ought to be superior to every exception, they ought to stand perfectly indifferent between the parties, and although the bias which was acknowledged in this case might not perhaps have been so strong as to render it positively improper to allow the juror to be sworn on the jury, yet it was desirable to submit the case to those who felt no bias either way; and therefore the court exercised a sound discretion in not permitting him to be sworn." (p. 297.)

Although in our opinion the trial court should have refused to allow these jurors to sit, it is apparent from the record that the judgment need not be reversed, for the appellant has suffered no material or substantial damage. The appellant took the stand in his own behalf, and after testifying that he first saw the two girls about two o'clock in the morning, that after he had driven with the girls in the hack for the man at the Lenox sanitarium he had come back to the Carey hotel, and then taken the girls to the Arlington hotel, he testified as follows:

"Ques. Now, isn't it a fact that in the police matron's room, in the presence of Mrs. King and those two girls, Leona Anderson and Pauline Forsythe, the chief of police and my stenographer, Frank Stewart, and myself, that you said that you drove south on Tremont street and that there you took Leona Anderson out of the cab and on top of the cab to drive, and you got into the cab with Pauline Forsythe? Ans. I do not remember it.

"Q. And didn't I tell you you needn't say anything if you didn't want to? A. I don't remember.

"Q. And then these girls told their story, and didn't

I ask you the question if you had had intercourse with Pauline Forsythe, and you said, No, you had tried to, but you could not while you were in the hack? A. I said something to that effect; I don't know what it was.

"Q. You remember of saying something to that effect at that time; why is it you can not remember the balance of it? A. Well, I don't know, I was all worked up.

"Q. Didn't I tell you you didn't have to make a statement if you didn't want to? A. No, I don't remember.

"Q. You do remember, however, saying that you did get into the hack with Pauline Forsythe and attempted to have intercourse with her, but couldn't? A. I don't remember saying 'I got in the hack.'

"Q. Do you remember of saying that you attempted to have intercourse with her, but couldn't? A. No, I don't remember so saying that positively.

"Q. Didn't you say a few moments ago you did? A. I don't remember just what I did say.

"Q. Didn't you say a few moments ago that you did remember of saying that you attempted having intercourse with Pauline Forsythe, but couldn't? A. I said something like that."

It is quite apparent from this testimony that this is a proper case in which to follow the statutory rule:

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." (Crim. Code, § 293.)

Had the evidence been such that the jury might reasonably have doubted that such attempt was committed, and had it not been for the admission by the appellant just referred to, the error in overruling the challenges to the jurors in question would be one affecting the substantial rights of the appellant in fact as well as in theory. But in view of the evidence and admission shown by the abstracts, and in view of the crime charged and the lower offense of which the appellant was convicted, he has no just and substantial cause for complaint.

The section of the code of criminal procedure quoted

10—84 KAN.

is an expression of the sound and sensible rule that error, to be availing, must be injurious in fact as well as in theory. This section has been upon the statute book since 1868 (Gen. Stat. 1868, ch. 82, § 293) ; and even before that, in 1860, this court, in the case of *The Territory v. Reyburn,* 1 Kan. [Dassler's ed.] 551, in the second paragraph of the syllabus said:

"The whole spirit of the civil and criminal codes of practice, alike, is to disregard technicalities and observe the substance only."

Without referring to numerous early authorities, it is sufficient to suggest that this doctrine, now, in this state, made almost venerable by time, has in recent as well as in former years been approved and followed by this court. (*The State v. Johnson,* 70 Kan. 861, 867; *The State v. White,* 71 Kan. 356; *The State v. Connor,* 74 Kan. 898; *The State v. Hinchman,* 74 Kan. 419; *The State v. Tawney,* 78 Kan. 855; *The State v. Carrithers,* 79 Kan. 401; *The State v. Moore,* 79 Kan. 688, 692; *The State v. Bowman,* 80 Kan. 473, 478; *The State v. Winters,* 81 Kan. 414, 421.)

From the evidence before us it is impossible to see how the jury, regardless of any former knowledge or information, could have arrived at any other verdict, and it would be idle to require a new trial under these circumstances.

The judgment of the trial court is affirmed.