Steve CASIAS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6915.

United States Court of Appeals
Tenth Circuit.

Feb. 28, 1963.

James W. Heyer, Denver, Colo., for appellant.

Arthur L. Fine, Asst. U. S. Atty., for the D. of Colorado (Lawrence M. Henry, U. S. Atty., for the D. of Colorado, was with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT, LEWIS, BREITENSTEIN, HILL, and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge, with whom PICKETT and LEWIS, Circuit Judges, concur.

Appellant-defendant Casias was charged in a one-count indictment with the receipt, concealment, and sale of heroin in violation of 21 U.S.C. § 174, convicted by a jury, and sentenced to 14 years imprisonment. He claims that he was deprived of his Sixth Amendment right to trial by an impartial jury because prior service by members of the jury panel on similar cases, in which the prosecution witnesses in his case appeared and testified, raised a presumption of law that the entire panel was partial and prejudiced.

Prior to the trial of Casias, 8 narcotic cases had been tried by two federal district courts using a jury pool and a guilty verdict returned in each case. Of the 44 members of the panel available at the Casias trial, 43 had sat on one or more of these narcotic cases. Of the 12 jurors selected to try Casias, one had served 3 times in similar cases, 4 had served twice, and 6 had served once. All the jurors except one had heard the testi-

mony of 2 or more of the government witnesses in similar cases and 10 had previously deliberated with one or more of the others in similar cases.

The contention that the entire panel was prejudiced and unfair was asserted by a motion attacking the array, an objection to the impanelling of the jury, a motion for a mistrial, and a motion for a new trial. The defendant exhausted all his peremptory challenges but challenged no individual juror for cause.

The Sixth Amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * *." This right is neither enlarged nor diminished by the Fifth Amendment provision that a person shall not "be deprived of life, liberty, or property, without due process of law." Although denial of trial by an impartial jury is also the denial of due process,[1] the basic question is whether the jury was impartial.

The Supreme Court said in United States v. Wood, 299 U.S. 123, 145–146, 57 S.Ct. 177, 185, 81 L.Ed. 78, that impartiality "is a state of mind" for the ascertainment of which "the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." A trial court exercises a broad discretion "to see that the jury as finally selected is subject to no solid basis of objection on the score of impartiality."[2] Dennis v. United States, 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734, points out that: "The way is open in every case to raise a contention of bias from the realm of speculation to the realm of fact."

Over the years, well considered interrogatories have been developed to search a prospective juror's mind for bias and prejudice. In a careful, patient, and painstaking manner the trial judge asked these questions of every person called to the box. No question suggested by defense counsel remained unasked. The prior service of each juror was explored and inquiry was made as to the effect of such service upon the individual's fairness and impartiality. Every member of the jury which tried Casias unequivocally stated that he had no opinion as to the defendant's guilt, that he would give no greater credibility to the testimony of government witnesses, all of whom had testified in similar cases, than to that of others, and that he would be a fair and impartial juror.[3]

The issue before us is not the adequacy of the voir dire examination. The record contains no proof of actual or individual bias or prejudice. The contention is that the prior service in similar cases presented by identical prosecution witnesses raises a presumption of bias and prejudice as a matter of law which destroys the competence of the jurors collectively.

The issue presented is not new to the courts.[4] The general rule is that a juror is not disqualified to sit in a criminal case because he previously sat on a similar case arising out of a separate, distinct, and independent transaction.[5] When the same transaction results in more than one offense, a juror who has convicted in one case arising out of that transaction is not competent to sit in another criminal case wherein another defendant is charged with a similar[6] or different[7] offense arising from the transaction.

The particular question here presented is disqualification because of prior service on similar cases which arose out of

1. See Baker v. Hudspeth, 10 Cir., 129 F. 2d 779, 781, certiorari denied 317 U.S. 681, 63 S.Ct. 201, 87 L.Ed. 546.

2. Frazier v. United States, 335 U.S. 497, 511, 69 S.Ct. 201, 209, 93 L.Ed. 187.

3. One juror who expressed bias was discharged by the court on its own motion.

4. See annotation at 160 A.L.R. 753.

5. Ibid. pp. 762–766 and cases there cited. See also Ramos v. United States, 1 Cir., 12 F.2d 761, 762–763.

6. Lett v. United States, 8 Cir., 15 F.2d 690.

7. 160 A.L.R. 761–762 and cases cited in notes 17–20.

independent transactions and in which identical witnesses are used by the prosecution to establish similar but disconnected criminal acts. On this question a sharp conflict exists in state decisions [8] but not in federal decisions.

In Wilkes v. United States, 6 Cir., 291 F. 988, 990, certiorari denied 263 U.S. 719, 44 S.Ct. 181, 68 L.Ed. 523, the facts were fairly analogous to those at bar—similar offenses and identical witnesses. The court rejected the attack on the jury saying:

> "Each case involved differing conditions and questions of credibility on the part usually of different defendants, and the credibility of both Taylor and his wife [the identical witnesses] was required to be weighed not only upon the facts of the individual case, but as between these witnesses and different defendants."

Haussener v. United States, 8 Cir., 4 F.2d 884, 886, was a case under the National Prohibition Act wherein 5 jurors had previously sat in similar cases and convicted on the testimony of identical witnesses. The court affirmed the conviction and said:

> "If, when one case has been tried, the entire panel of jurors sitting therein is disqualified from sitting as jurors in every other case of a similar sort, trial courts will be so far impeded in the transaction of their business as to make the enforcement

of this act difficult, if not impossible."

The Eighth Circuit reached a similar conclusion in Cwach v. United States, 8 Cir., 212 F.2d 520, 529, a Mann Act case wherein some jurors had previously served in a similar case and heard the testimony of the same government witness. The court said: "The existence of prejudice cannot be presumed." The Wilkes and Haussener decisions were followed by the Fourth Circuit in Belvin v. United States, 4 Cir., 12 F.2d 548, 550, certiorari denied 273 U.S. 706, 47 S.Ct. 98, 71 L.Ed. 850. We are aware of no federal decision holding to the contrary.[9]

The Tenth Circuit has considered objections to jurors because of previous service. In Calderon v. United States, 10 Cir., 269 F.2d 416, 417, the appellant relied on 28 U.S.C. § 1869 which permits a challenge on the ground that a juror has sat as a juror during any term held within the preceding year. In rejecting the contention the court said:

> "It [the statute] fails to contain any language couched in the present tense which fairly construed indicates a congressional purpose to include as a ground of challenge for cause service as a juror in one or more cases previously tried during the then current term of court in which the challenge is asserted."

Harbold v. United States, 10 Cir., 255 F.2d 202, 205, affirmed a conviction in a case over the objection that "the appellant was denied a fair and impartial trial

---

8. Compare cases cited in 160 A.L.R. 767–769, note 8, with those cited in note 9 on pages 769–770 and note 12 on pages 770–771. Indeed conflicting decisions are found in some states. Compare Bills v. State, 48 Okl.Cr. 233, 290 P. 935, with Scrivener v. State, 63 Okl.Cr. 418, 75 P. 2d 1154, and Bailey v. State, 56 Tex.Cr. 226, 120 S.W. 419, with Hardgraves v. State, 61 Tex.Cr. 422, 135 S.W. 144.

9. United States v. Burr, Va.Cir., 25 Fed. Cas. 49 (No. 14,692g) is not contra. The discussion therein of disqualification because of consanguinity is not pertinent. In Burr's treason trial disqualification was urged because of adverse pre-trial

publicity. The court held that a prospective juror who had deliberately formed and delivered an opinion on a prisoner's guilt is not in a state of mind capable to weigh the evidence fairly and is therefore disqualified. In so holding the court observed that a similar opinion as to innocence would be ground for challenge. A challenge to jurors' competency because of adverse pre-trial publicity was rejected in Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98, rehearing denied 370 U.S. 965, 82 S.Ct. 1575, 8 L.Ed.2d 834. Cf. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751. Everitt v. United States, 5 Cir., 281 F.2d 429, 438, is distinguishable on the facts.

because some of the members of the convicting jury heard two prior narcotic cases in which the same government witnesses testified." Although in that case no challenge was made to the array or to an individual juror, the court observed that: "No prejudice is shown and we perceive no fundamental error."

On the basis of precedent the attack made on the Casias jury must be disallowed. The next question is whether those precedents should be disregarded because of the "totality of facts." [10] Recourse to "totality of facts" is no more than a case by case approach. Any decision based on such an approach lacks both clarity in meaning and facility in application. Clarity is absent because no standards are established and no controlling principles are delineated. Any application of the decision must be on the basis of analogy, an unsatisfactory mode of reasoning because of the subjective impact of varying factual situations. Facility of application is lost because a case by case approach is basically retrospective in character. To say that an individual is deprived of his rights only in those cases where a retrospective appraisal reveals a shocking situation defeats the rationale of the law. Rights exist to insure that justice will be done prospectively.

The hazard of the case by case approach is acute in a situation such as that presented here. The appearance of similar cases on any criminal docket is usual rather than unusual and the reappearance of identical prosecution witnesses is to be expected. These cases may be tax cases with accountants of the Internal Revenue Service as witnesses, mail offenses with postal inspectors as witnesses, interstate transportation cases relying on the testimony of agents of the Federal Bureau of Investigation, narcotic cases based on the testimony of Treasury agents, and other types of offenses, the responsibility for the investigation of which lies in some governmental agency. The occurrence of similar cases in bunches exists and will continue to exist. If the question of the impartiality of a jury is to be determined retrospectively on a case by case basis, no judge will ever know when to draw the line.

The acceptance of the case by case approach does not require the reversal of this conviction. The accused is entitled to a trial by a fair and impartial jury— not by a jury of his choice. No challenge was or is made to the competence of any individual juror. Considered separately the members of the jury were all qualified. Considered collectively they remain qualified.

The contention of collective disqualification is based on the prior service of panel members on similar cases in which identical witnesses testified. This claim must be tested against the record.

We are concerned with the jurors who convicted Casias. Only one of them had served on 3 prior juries. Six had served once and one had no prior service. In Harbold, supra, the Tenth Circuit found "no fundamental error" in a trial where an unstated number of jurors had served in two previous cases. In the case at bar only one juror had sat in more than 2 cases and he had sat on 3.

The basic point is that the prior cases presented separate and distinct crimes arising out of disconnected transactions occurring at different places and times and engaged in by others. A juror who has convicted in one case could not and would not have any knowledge or reasoned opinion of guilt in the subsequent case. Any inference of prejudice in such a situation is based on nothing more than suspicion, speculation, and conjecture.

The claim of prejudice because the prosecution used identical witnesses must also be tested against the record. The defendant does not question the sufficiency of the evidence to sustain the jury verdict. Five witnesses, Pinelli, Wolski, Walton, Gress, and Gwinn, appeared for the government. Pinelli testified that

---

10. Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 86 L.Ed. 1595.

he purchased a quantity of heroin from Casias. Wolski drove Pinelli to the area where the transaction occurred, gave him the money to buy the heroin, saw Pinelli and Casias together, and took the heroin from Pinelli on his return. Walton and Gress, from a distance, saw Pinelli and Casias together at the approximate time of the heroin sale. Gwinn, a chemist, gave his expert analysis of the heroin.

The conviction rests on the testimony of Pinelli. Of the 12 jurors, 4 had each heard Pinelli testify once in previous cases. These 4 jurors in the Casias case had to test the credibility of Pinelli against different facts and to weigh his testimony against that of different witnesses.[11] On the voir dire the prospective jurors who had previously heard the government witnesses stated that they would give no more weight and credibility to the testimony of those witnesses than they would give to the testimony of others. And each affirmed without equivocation his ability to try Casias fairly and impartially. The trial court, in the exercise of its discretion, decided that the jurors were competent. The grounds urged for the rejection of that decision have no substantial basis and arise from nothing more than suspicion, conjecture, and speculation.

In United States v. Wood, Frazier v. United States, and Dennis v. United States, all supra, the Supreme Court stressed the serious duty of a trial court to determine the question of bias and the broad discretion which must be exercised in such determination—a discretion which must be used with zeal to protect the rights of an accused. Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, says that:

"To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to es-

tablish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." [12]

Prophetically, the Supreme Court, more than 50 years ago, said in Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 5, 54 L.Ed. 1021, that:

"If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day."

The record in the case at bar shows no abuse of discretion. To the contrary it shows a zealous regard for the rights of the accused. Suspicion and conjecture are no basis for a presumption of prejudice. The claim of an unfair jury is without merit.

The other contentions of the defendant deserve little consideration. Objection is made to testimony of the witness Pinelli on re-direct examination as to a conversation which the witness and Wolski had with the defendant and in which the defendant asked Wolski to do something for him because he was sick. Wolski replied that he could do nothing to secure narcotics for him. The fact of the conversation was first brought out in cross-examination of Pinelli. All that was done on re-direct was to bring out the entire conversation. The prosecution had the right to do this after defense counsel had opened up the subject.

The last point relates to the failure of the court to instruct that lack of knowledge of unlawful importation was a defense. The answer is that the defendant denied the transaction. In Griego v. United States, 10 Cir., 298 F.2d 845, the defendant admitted the transaction and denied knowledge of unlawful importation. The judgment was reversed on the ground that the defense of lack of knowledge had to be submitted to the jury. In the case at bar the court prop-

---

11. Casias testified in his own defense.

12. See also Beck v. Washington, 369 U.S. 541, 547, 82 S.Ct. 955, 8 L.Ed.2d 98.

erly submitted to the jury the defense raised by the defendant.

The judgment should be affirmed

LEWIS, Circuit Judge, concurring in the opinion of BREITENSTEIN, Circuit Judge.

This case is bottomed against a factual background from which no fully acceptable result can be obtained. Admittedly, the composition of this jury was completely and understandably unsatisfactory to the defendant and, being so, destroyed subjective confidence that he could, or did, get a fair trial before an impartial jury. And to combine justice with appearance of fairness in the trial of causes so as to inspire both subjective and objective confidence in the administration of justice is the goal of faultless administration. To such end, we nurture the seed of perfection that grows in man's mind but it may be lost in a too-early harvest. Often, it is.

I concur in affirming the judgment because I believe the views expressed by Judge Breitenstein are sound in law when considered singly and reach a result which best serves the over-all administration of justice. To hold that not one of the individual jurors was here disqualified for cause under long established rules but that the collective jury was impliedly prejudiced because of the totality of circumstance is but a denial of the first premise—the impartiality of the individual jurors. Collective bias can only be the result of individual disqualifications made more apparent. If this defendant has been denied a constitutional right the cause should be remedied not merely the effect recognized.

Upon occasion, the application of established rules of law wounds the appearance of fairness in the trial of causes. It does in this case. But the actuality of fairness may persist through contrary appearance. I believe it does here. And if the importance of appearance in the administration of justice needs to be upgraded in any regard it should be done by change of rule and not by rejection of rule in particular cases.

I have had some hesitancy in voting to affirm this judgment for a reason not shared by any of my Brothers—this Court's reversal in Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250. However, since Marshall may be distinguished procedurally and factually from the case at bar and my surmise of the potential implications of the result therein reached is not shared, I am content to read Marshall as having limited application.

MURRAH, Chief Judge, with whom HILL and SETH, Circuit Judges, concur.

This appeal squarely presents the question whether, in these peculiar circumstances, this convicted dope peddler was accorded a trial by an "impartial jury," guaranteed to him by the Sixth Amendment to the Constitution. We do not think so.

We do not have a waiver for failure to exercise all peremptory challenges, as in Jordan v. United States, 10 Cir., 295 F.2d 355, or for failure to challenge for cause, as in Harbold v. United States, 10 Cir., 255 F.2d 202; nor do we have the question of statutory disqualification, as in Calderon v. United States, 10 Cir., 269 F.2d 416. The voir dire examination was conducted by the Court with befitting care and solicitude. Each juror, answering for himself, avowed his impartiality. There was no evidence of actual bias, and the avowals are unimpeachable, if in the circumstances the law allows the juror to be the judge of his own impartiality. We think the array should have been discharged for implied bias.

No statute or rule of decision disqualifies a prospective juror in the present circumstances, nor can we expect the Constitution to provide a ready formula for the ascertainment of a state of mind. See 28 U.S.C. § 1861; United States v. Wood, 229 U.S. 123, 145, 57 S.Ct. 177, 81 L.Ed. 78; Frazier v. United States, 335 U.S. 497, 511, 69 S.Ct. 201, 93 L.Ed. 187; Dennis v. United States, 339 U.S. 162, 172, 70 S.Ct. 519, 94 L.Ed. 734; and Irvin v. Dowd, 366 U.S. 717, 724, 81 S.Ct. 1639, 6 L.Ed.2d 751. But we do

know that an impartial jury trial is basic to due process of law. It "stands guardian over all other rights." Jackson J., concurring in Dennis v. United States, supra, p. 173, 70 S.Ct. p. 524. And, the trial judge has the undoubted power, duty and discretion to vouchsafe the selection of an impartial jury by an appraisal of the totality of facts in a given case. See 28 U.S.C. § 1870 and Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 86 L.Ed. 1595.

There is nothing new or novel in the concept of implied bias or disqualification based on consideration of policy. It is not uncommon for the law to say that one occupying a status or relationship which raises a suspicion of bias or prejudice shall not be called into the jury box, and if called, shall be excused for cause. See Crawford v. United States, 212 U.S. 183, 29 S.Ct. 260, 53 L.Ed. 465; United States v. Wood, supra. At common law, jurors were challengeable on principle for bias or partiality due to kinship, interest, former jury service in the same cause, or because the prospective juror was a master, servant, counselor, steward or attorney, or of the same society or corporation. See Cooley's Blackstone, Vol. 2, p. 363. These conditions of impartiality persist as a constitutional safeguard to an impartial jury.

Commenting upon the right to challenge for "suspicion of partiality," Chief Justice Marshall, in United States v. Burr, Case No. 14,692g, 25 Fed.Cas. pp. 49, 50, stated that, "The relationship may be remote; the person may never have seen the party; he may declare that he feels no prejudice in the case; and yet the law cautiously incapacitates him from service on the jury because it suspects prejudice, because in general persons in a similar situation would feel prejudice." More recently the principle has been reaffirmed in the language of Justice Frankfurter who said that, "The reason for disqualifying a whole class on the ground of bias is the law's recognition that if the circumstances of that class in the run of instances are likely to generate bias, consciously or unconsciously,

it would be a hopeless endeavor to search out the impact of these circumstances on the mind and judgment of a particular individual. * * * The appearance of impartiality is an essential manifestation of its reality." Dennis v. United States, supra, Frankfurter, J., dissenting, 339 U.S. pp. 181–182, 70 S.Ct. p. 525.

The courts have invoked the impartial jury guaranty to disqualify a prospective juror who has set on a convicting jury involving another defendant on the same charge or one growing out of the same transaction or occurrence. They have accepted prospective jurors who have sat on convicting juries involving another defendant on a similar but disconnected charge. But there is good, and we think persuasive, authority for the proposition that a prospective juror or jurors who have sat together on a convicting jury in a similar but disconnected case, based upon the testimony of the same prosecuting witnesses, should be discharged for implied bias. See Annot. 160 A.L.R. 732. The thesis is that "[h]aving passed upon the credibility of witnesses in a similar case upon substantially the same testimony, and having theretofore rendered a verdict on their oaths, it is not to be believed that they [would] sit upon this case with such an opinion previously formed without it influencing their action." Priestly v. State, 19 Ariz. 371, 171 P. 137, 139; 3 A.L.R. 1201. It is said that the "[a]nswers by these jurors to categorical questions, though doubtless intended to be truthful, are less convincing than the known nature and tendency of the human mind." State v. Hammon, 84 Kan. 137, 113 P. 418, 419. In these circumstances, the "jurors cannot be judges of their own impartiality." Temple v. State, 15 Okl.Cr. 176, 175 P. 733; Scrivener v. State, 63 Okl.Cr. 418, 75 P.2d 1154. As Justice Holmes once observed, "Any judge who has sat with juries knows that in spite of forms they are extremely likely to be impregnated by the environing atmosphere." Frank v. Mangum, 237 U.S. 309, 345, 349, 35 S.Ct. 582, 594, 595, 59 L.Ed. 969, cited by Frankfurter, J., in Dennis v. United

States, supra, 339 U.S. p. 183, 70 S.Ct. p. 526.

At the bar of this court, the Government freely conceded that prospective jurors could be so tainted by exposure to guilt as to render them incapable of judging their own impartiality. It simply says that this case is not sufficiently aggravated to justify disqualification of the array for cause, and that the judge did not abuse his allowable discretion. We cannot conceive of a more aggravated case of compounded guilt.

The qualifications of a juror or jurors is, to be sure, a matter of mixed law and fact as to which the trial court is the first and best judge, and his judgment on the impartiality of a prospective juror should not be disturbed, except in the rarest of cases. United States v. Chapman, 10 Cir., 158 F.2d 417; and see Spies v. Illinois, 123 U.S. 131, 8 S.Ct. 22, 31 L.Ed. 80; United States v. Wood, supra; Frazier v. United States, supra; Dennis v. United States, supra; and Irvin v. Dowd, supra. But where, as here, the question presented is one of law, based upon constitutional considerations of due process, the ultimate decision is less a matter of discretion and more a matter of policy, to be resolved "by an appraisal of the totality of facts in a given case." Betts v. Brady, supra; Cf. Irvin v. Dowd, supra; Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250.

In appraising the facts in the context of their constitutional significance, it is not irrelevant to note the nature of the offense charged. Everyone, be he judge or juror, is appalled at the frequency of these cases, growing out of traffic in narcotic drugs. We abhor the vicious impact on society, and are apt to have a vengeful attitude toward one who is in any way connected with this sordid business, whether we sit in our living room or in the jury box. Viewed in this light, it seems improbable that any average man or woman, who has been subjected to the preponderance of guilt, such as these jurors, both collectively and individually, would be capable of searching the state of their minds for evidence of bias. Indeed, we do not think they should be asked to do so.

We are fully aware of the administrative problems inherent in the practical application of this concept. We know that these cases are prolific, and that a speedy trial may require a setting of similar cases on the same calendar. This means that situations like ours are likely to arise in varying degrees, and the court would, of course, be confronted with the problem of either discharging the array or panel, and summoning a new one (at additional cost), or continuing the case. The court would be confronted with the question of where to draw the line between implied and actual bias, i. e., when qualification rests in fact on voir dire or in law. The first answer is that, as we have seen, there can be no rule of thumb or formula for determining at what point the imputation of prejudice will render an array or panel disqualified, as a matter of law. Each case should necessarily rest on its own Constitutional bottom. This case, of course, presents extraordinary facts, not likely to recur. Not every prospective juror who has sat on another similar case with the same government witnesses is ipso facto debarred from the jury box. His qualifications may very well rest on voir dire. Prejudice should be implied in law only when the accumulative effect of the extrinsic evidence of guilt is clear and convincing. In such cases, there can be no alternative to due process of law.

We would reverse and remand, with directions to grant a new trial.

PER CURIAM.

The judgment is affirmed by an equally divided court.