**UNITED STATES of America,**
**Appellee,**

v.

**Zettie HAYNES, Appellant.**

**No. 179, Docket 30734.**

United States Court of Appeals
Second Circuit.

Argued Nov. 15, 1967.

Decided July 30, 1968.

John F. Mulcahy, Jr., Asst. U. S. Atty., Jon O. Newman, U. S. Atty., District of Connecticut, for appellee.

James W. Sherman, Hartford, Conn., for appellant.

Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.

WATERMAN, Circuit Judge:

This prosecution was one of seventeen, including United States v. Ragland, 375 F.2d 471 (2 Cir. 1967), cert. denied, 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968), brought in Hartford, Connecticut, that were commenced as a result of a sweeping probe conducted early in 1966 into illegal narcotics transactions in that area. After a trial before Judge T. Emmet Clarie and a jury in the United States District Court for the District of Connecticut appellant was convicted of having violated 26 U.S.C. § 4704(a) (selling narcotic drugs not in or from the original stamped packages), 26 U.S.C. § 4705(a) (selling narcotic drugs with-

out first having received a written order for them upon a form issued by the federal government), and 21 U.S.C. § 174 (selling narcotic drugs with the knowledge that the drugs were imported or brought into the United States contrary to law). A sentence totaling six years imprisonment was imposed, and this appeal followed. We find no merit in any of the contentions appellant advances upon appeal, and we affirm his conviction.

First of all, appellant would have us hold that the district court prejudicially erred in refusing to direct a verdict of not gulity on the ground of entrapment and in not granting appellant's motion to set aside the verdict of guilty after the guilty verdict was returned. Appellant's claim that he was entrapped as a matter of law is based upon his and his wife's testimony concerning a conversation between appellant and a government informer, one Allevo, during which appellant, a drug addict who testified he was experiencing "withdrawal" at the time of the conversation, claims he was imposed upon by Allevo, a very sick man, in much the same manner as Kalchinian imposed upon Sherman, the defendant in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Allevo died before the trial commenced and thus the testimony of the Hayneses regarding the alleged inducement was uncontradicted. Nevertheless, the fortuitously uncontradicted testimony of appellant and his wife would not have the effect of establishing entrapment as a matter of law, for "[w]hile petitioner presented enough evidence for the jury to consider, they were entitled to disbelieve him in regard to [Allevo] and so find for the Government on the issue of guilt." Masciale v. United States, 356 U.S. 386, 388, 78 S.Ct. 827, 829, 2 L.Ed.2d 859 (1958). Also see United States v. Pugliese, 346 F.2d 861, 862–863 (2 Cir. 1965); United States v. Comi, 336 F.2d 856, 859 (4 Cir. 1964), cert. denied, 379 U.S. 992, 85 S. Ct. 704, 13 L.Ed.2d 611 (1965); Williamson v. United States, 262 F.2d 476, 481 (9 Cir.), cert. denied, 359 U.S. 971, 79 S. Ct. 885, 3 L.Ed.2d 837 (1959); United States v. Clarke, 220 F.Supp. 905, 907 (E.D.Pa.1963). See, generally, United States v. Riley, 363 F.2d 955 (2 Cir. 1966). Thus Sherman v. United States, supra, is not controlling here, for the evidence of entrapment in that case came from the Government's own witnesses and the Court specifically noted that no issue of credibility was involved. 356 U.S. at 373, 78 S.Ct. 819, 2 L.Ed.2d 848. Here there is a credibility issue; narcotics agent Valentine, the man who allegedly purchased the narcotics from appellant, had testified concerning his dealings with appellant, and, from Valentine's testimony, if believed, appellant could appear to be a "pusher," and so the tale that Allevo induced sales by one not predisposed to make sales would be less believable. Therefore, whether appellant was entrapped was a jury question, and the jury evidently chose to disbelieve the testimony of appellant and his wife. Moreover, viewing the evidence as a whole, there was enough evidence in the case to show beyond a reasonable doubt appellant's propensity to commit the crimes of which he was charged. The trial court did not err in refusing to grant the motions.

However, inasmuch as the jury determination on the issue of the credibility of agent Valentine (and thus also on the issue of appellant's credibility) favored Valentine and was decisive in denying appellant's entrapment defense, we reach appellant's second contention, namely that he was denied a trial "by an impartial jury," U.S.Const. amend. VI. He contends that some of the jurors who sat in his case could not have been impartial because of inflammatory publicity surrounding the narcotics cleanup in Hartford and because these same jurors had also sat just prior to appellant's trial in two other narcotics trials stemming from the same Hartford probe, in both of which trials there had been convictions. He contends that the agents who testified in these earlier trials testified against him in his trial, and that these jurors,

having considered the credibility of, and having believed, the same government witnesses in the earlier trials were prejudiced in favor of the credibility of the government's witnesses at this trial.

During the selection of the jury the record shows that after the trial judge had interrogated the entire array (venire) of 41 as a group, and after both Government and defense counsel had indicated that they had no further questions to address to the array, the names of 28 out of the 41 veniremen were drawn for possible use in appellant's case, 28 being the sum of 12 (number of jurors to be seated for this case), 6 (number of government peremptory challenges), and 10 (number of defense peremptory challenges). Both counsel were then instructed to exercise their peremptory challenges; defense counsel exercised one of his ten, and then asked that 13 of the remaining 27 veniremen be excused for cause, inasmuch as they had served as jurors in other narcotics cases arising from the same Hartford clean-up and had previously approvingly appraised the very Government witnesses who were likely to be witnesses in appellant's case. This request was denied and defense counsel was instructed to exercise his remaining 9 peremptories. This he declined to do because "the number available is inadequate to cover all of the persons in the class to which the defense has objected for cause * * *." Thereupon, 12 of the 28 veniremen were impaneled and sworn. Of these 12, 7 had seen service on the juries in other narcotics cases arising from the Hartford crackdown.

■ Upon these facts the Government argues that we should hold, as we did in United States v. Ragland, supra, 375 F.2d at 475, that by failing to exercise all of his peremptory challenges appellant waived his right to object to the composition of the trial jury. As it developed, appellant's 9 remaining challenges would have been sufficient to remove the "tainted" jurors who sat in his trial, but when he was required to exercise the peremptories there were 13 "tainted"

jurors, 4 more than he could remove with 9 peremptory challenges. We agree with appellant that for him to have exercised his 9 remaining peremptory challenges would have been a futile gesture, compare Frazier v. United States, 335 U.S. 497, 518, 69 S.Ct. 201, 93 L.Ed.2d 187 (1949) (Jackson, J., dissenting), and so we hold that appellant did not waive his right to challenge the jury when he declined to exercise them.

It remains to inquire whether the 7 jurors who had participated as jurors in the previous narcotics cases may be said to have been prejudiced or biased in favor of the credibility of the Government's witnesses in appellant's case. If there were bias or prejudice we must hold that the district court committed reversible error in denying appellant's challenges to these jurors for cause, for appellant's right to a trial by an impartial jury was denied him. Cf. Lett v. United States, 15 F.2d 690 (8 Cir. 1926).

■ Long ago Chief Justice Marshall noted that "[t]he great value of the trial by jury certainly consists in its fairness and impartiality." United States v. Burr, 25 Fed.Cas. 49, 50 (No. 14692g) (C.C.Va.1807). Yet, to this date, in this context, there has been no generally accepted working definition of "impartiality." The Constitution gives us no standard for determining impartiality and procedures for determining it are not chained to any rigid formula. United States v. Wood, 299 U.S. 123, 145–146, 57 S.Ct. 177, 81 L.Ed. 78 (1936). A distinction has been drawn between those cases where a challenge for cause has been based upon actual bias and those where a challenge has been based upon implied bias. See, e. g., Dennis v. United States, 339 U.S. 162, 167, 70 S.Ct. 519, 94 L.Ed. 734 (1950); United States v. Wood, supra, 299 U.S. at 133–135, 57 S.Ct. 177; Casias v. United States, 315 F.2d 614, 615, 619 (10 Cir.), cert. denied, 374 U.S. 845, 83 S.Ct. 1901, 10 L.Ed.2d 1065 (1963) (conviction affirmed by an equally divided in banc court, both factions drawing the actual bias-implied bias distinction); see generally, Note,

49 Iowa L.Rev. 1324 (1964). The former type of bias is based upon express proof, e. g., by a voir dire admission by the prospective juror of a state of mind prejudicial to a party's interest. Appellant here cannot claim actual bias; the veniremen were never asked upon voir dire whether they had participated in previous narcotics trials, or if they had participated whether they would be prejudiced in favor of the credibility of the Government's witnesses. The trial court gave defense counsel the opportunity at the time of the voir dire to propound additional questions and he declined to do so. Therefore the trial court had no basis upon which it could have found a juror to have had an actual bias. Indeed, before the twelve were chosen every venireman had been asked upon his voir dire whether he knew the defendant, or knew of him, or had any knowledge of the subject matter of the case, and whether he believed he would be a fair and impartial juror. The trial court, when impaneling a jury, "has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor." Dennis v. United States, supra, 339 U.S. at 168, 70 S.Ct. at 521. See also United States v. Wood, supra, 299 U.S. at 133–134, 150, 57 S.Ct. 177; Frazier v. United States, supra, 335 U.S. at 511–512, 69 S.Ct. 201. The appellant here had the duty "to raise a contention of bias from the realm of speculation to the realm of fact." Dennis v. United States, supra, 339 U.S. at 168, 70 S.Ct. at 521. Because he made no effort to do so, we cannot say, insofar as any claim of actual bias is concerned, that the trial court abused its discretion by denying appellant's request that the thirteen veniremen who had sat in previous trials be excused for cause.

■ The question of implied bias remains. In determining whether a prospective juror should be excluded on this ground his statements upon voir dire are totally irrelevant; a person "may declare that he feels no prejudice in the case; and yet the law cautiously incapacitates him from serving on the jury because it suspects prejudice, because in general persons in a similar situation would feel prejudice." United States v. Burr, supra, 25 Fed.Cas. at 50 (Marshall, C. J.). To Justice Black, this is the "average man" test, Dennis v. United States, supra, 339 U.S. at 176, 70 S.Ct. 519 (dissenting opinion).

■ "At common law, jurors were challengeable on principle for bias or partiality due to kinship, interest, former jury service in the same cause, or because the prospective juror was a master, servant, counselor, steward or attorney, or of the same society or corporation. See Cooley's Blackstone, Vol. 2, p. 363." Casias v. United States, supra, 315 F.2d at 620 (Murrah, C. J., dissenting). Not only have these common law grounds for causal challenge retained their vitality, Casias v. United States, supra at 620 (dissenting opinion) but to them have been added others from which prejudice or bias may be implied. For example, it has been held that where a juror has served in a trial in which the defendant is convicted of a crime he may not serve on a jury trying another defendant charged with the same offense arising out of the same transaction. Lett v. United States, supra. Likewise, a juror's prejudice at the later trial is implied where a different offense is charged but the transaction out of which the alleged crime at issue arose is the same transaction involved at the earlier trial. Kleindienst v. United States, 48 App. D.C. 190 (Ct.App.1918). However, the courts have decided that a juror's prejudice must be proved, not merely implied, when he serves at the separate trials of different defendants who are tried upon charges which are similar but which arise out of separate and distinct transactions. See Ramos v. United States, 12 F.2d 761 (1 Cir. 1926); Belvin v. United States, 12 F.2d 548 (4 Cir.), cert. denied, 273 U.S. 706, 47 S.Ct. 98, 71 L.Ed. 850 (1926); and state-court cases cited in Annotation, 160 A.L.R. 753, 762–766 (1946). Moreover, the federal courts have uniformly held that prejudice must

be proved, not merely implied, in cases indistinguishable from the present one, i. e., in cases in which the challenged juror has served in the trial of another defendant charged with a similar but independent criminal offense and in which identical witnesses are used by the prosecution to establish the similar but unconnected criminal acts.[1] Casias v. United States, supra; Cwach v. United States, 212 F.2d 520, 529 (8 Cir. 1954); Belvin v. United States, supra at 550; Wilkes v. United States, 291 F. 988, 990 (6 Cir. 1923), cert. denied, 263 U.S. 719, 44 S.Ct. 181, 68 L.Ed. 523 (1924); accord, United States v. 662.44 Acres of Land, etc., 45 F.Supp. 895, 897–898 (E.D. Ill.1942).

Is this long-standing federal practice of not inferring prejudice in cases indistinguishable from the present one a justifiable practice in light of the "average man" test? We think it is. We have enough faith in the intellectual capabilities of an average person to believe that a person who has passed upon a government witness's credibility in one set of circumstances and has weighed that witness's testimony against that of one group of defense witnesses will not be influenced by the conclusion he had drawn on that occasion when he weighs the same witness's credibility in the context of different circumstances and in the light of testimony from a different group of defense witnesses. See Casias v. United States, supra, 315 F.2d at 618; Belvin v. United States, supra, 12 F.2d at 550; Wilkes v. United States, supra, 291 F. at 990. Where some of the witnesses on both sides of the case are not the same in both causes the juror has the opportunity in the later case to gauge anew against a shifted background the testimony and credibility of the witnesses who had testified in the earlier case. While noting that, psychologically speaking, a juror may develop a "set" toward a familiar witness's credibility and toward conviction, even though the witness may not be as reliable in one context as in another, one commentator has noted that the occurrence of such a "set" is not a certainty, and has concluded that the prejudicial influence may not be so strong that any individual juror who has been exposed to it need be disqualified. Note, 112 U.Pa.L.Rev. 444, 449–450 (1964). We agree that there is an opportunity for a juror to be prejudiced when he hears the same witness in two different causes, but "[i]f the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day." Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910).[2] We

---

1. Although a conflict exists in the state cases regarding this point, the majority of the state decisions follow the federal rule. Compare cases cited in 160 A.L.R. 767–769 n. 8 with those cited at 769–770 n. 9, 770–771 n. 12.

2. We would be remiss not to note the basis of our disagreement with the dissent of three of the Tenth Circuit judges in Casias v. United States, 315 F.2d 614, 619–621 (10 Cir.), cert. denied, 374 U.S. 845, 83 S.Ct. 1901, 10 L.Ed.2d 1065 (1963). First of all, the dissenters approached the problem of whether implied prejudice was present by stating that the trial judge should resolve the issue " 'by an appraisal of the totality of facts in a given case,' " quoting from Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595 (1942). However, this language in Betts stated the test to be applied in determining whether the due process clause of the Fourteenth Amendment was being complied with; here we are concerned not so much with whether the general Fifth Amendment requirement of due process is being complied with as we are with the specific Sixth Amendment guarantee of an impartial tribunal. The "totality of the circumstances" approach has generally been rejected by the Supreme Court where specific constitutional guarantees are being dealt with. See, e. g., Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). We would agree with Judge Breitenstein, writing for the three judges who would affirm the conviction in Casias that, instead of a case-by-case approach, a rule of law, a guideline, is necessary here. "To say that an individual is de-

decline to find that the 7 jurors who sat in appellant's trial and who had been jurrors in previous narcotics cases where the same government witnesses had testified were prejudiced jurors as a matter of law.[3]

prived of his rights only in those cases where a retrospective appraisal reveals a shocking situation defeats the rationale of the law. Rights exist to insure that justice will be done prospectively." Casias v. United States, supra, 315 F.2d at 617.

Moreover, even if we were to follow the Betts v. Brady "totality of the circumstances" approach, we would disagree with the appraisal made by the *Casias* dissenters. In evaluating the circumstances there, especial emphasis was placed by the dissenters upon the fact that the crime charged was a narcotics violation. They reasoned that as the average man or woman has a vengeful attitude toward one who is in any way connected with the "sordid" narcotics business, such a juror would be incapable of searching the state of his mind for evidence of bias once he has been subjected to the preponderance of guilt. Thus, they said, a determination of actual bias by means of voir dire would be ineffectual, and hence it follows that implied bias must be found as a matter of law. We think this reasoning proves too much, for, if the average person has a "vengeful attitude" toward narcotic dealers, a narcotic dealer can never be tried by a jury of average persons and receive an impartial trial. Moreover, under the *Casias* dissenters' approach, a judge is asked to determine which crimes give rise to "vengeful attitudes" by average persons and which crimes do not. This approach, which would create a special exemption from the general rule as to jurors' competency when certain crimes are involved, has already been rejected by the Supreme Court. Dennis v. United States, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950) (especially concurring opinion of Jackson, J. at 173–175, 70 S.Ct. 519).

We also have trouble with the dissenters' final thoughts as to where the line between actual and implied bias should be drawn, thoughts which would seem to be measurably contradictory of much that had been said earlier:

The first answer is that, as we have seen, there can be no rule of thumb or formula for determining at what point the imputation of prejudice will render an array or panel disqualified, as a matter of law. Each case should necessarily rest on its own Constitutional bottom. *This case, of course, presents extraordinary facts, not likely to recur.* Not every prospective juror who has sat on another similar case with the same government witnesses is ipso facto debarred from the jury box. *His* qualifications may very well rest on voir dire. *Prejudice should be implied in law only when the accumulative effect of the extrinsic evidence of guilt is clear and convincing.* In such cases, there can be no alternative to due process of law. Casias v. United States, supra, 315 F.2d at 621. (Emphasis supplied.)

3. There is little doubt that a holding that these jurors were prejudiced jurors as a matter of law would call for quite a substantial change in judicial administration at the *nisi prius* level. What was said regarding the Volstead Act prosecutions and prohibition agents in Haussener v. United States, 4 F.2d 884, 886 (8 Cir. 1925), applies equally to narcotics prosecutions and narcotics agents:

\* \* \* [I]n the very nature of the situation practically all prosecutions for violations of the Volstead Act \* \* \* must be bottomed upon the testimony of prohibition agents. If, when one case has been tried, the entire panel of jurors sitting therein is disqualified from sitting as jurors in every other case of a similar sort, trial courts will be so far impeded in the transaction of their business as to make the enforcement of this act difficult, if not impossible.

Moreover, "The appearance of similar cases on any criminal docket is usual rather than unusual and the reappearance of identical prosecution witnesses is to be expected. \* \* \*. The occurrence of similar cases in bunches exists and will continue to exist." Casias v. United States, 315 F.2d 614, 617 (10th Cir. 1963).

Further, if, despite a juror's answer to voir dire questions, it is always to be held that he is prejudiced as a matter of law whenever he has served in a prior case similar to the one at issue and has heard some of the same witnesses, such a rule of law could quite conceivably lead to impairment of the accused's right under U.S.Const. amend. VI to a speedy trial, Casias v. United States, supra at 621 (dissenting opinion), and of the accused's right under U.S.Const. Art. III, § 2 and amend. VI to a trial within the state and district where the crime was committed. The conflict among these constitutional provisions appears to have become even more severely aggravated now that the Su-

In addition to pointing to the prior jury experience of some of the jurors, appellant points to allegedly excessive pretrial publicity as another factor to be considered in determining whether his trial jury was an impartial one. Appellant did not timely present this claim at the district court level. The prospective jurors should have been interrogated about the extent of their pretrial knowledge if this issue were to be preserved on appeal. As we said in United States v. Ragland, supra:

> Moreover, as undue influence resulting from excessive pre-trial publicity is a sufficient basis for challenging a juror for cause, Rizzo v. United States, 304 F.2d 810, 816 (8 Cir.), cert. denied sub nom. Nafie v. United States, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962), appellant's failure to question prospective jurors on their voir dire as to this and to challenge for cause disposed of this claim at that time. 375 F.2d at 476.

Even if we were to reach the merits of appellant's claim we would answer it as we answered appellant Ragland's claim, for this record, as that one, "is barren of any indication that the jurors were ever exposed to such an improper influence, much less that any of them were prejudiced by an exposure." 375 F. 2d at 476.

As a third ground for reversal, appellant argues that his motion for a judgment of acquittal should have been granted because the evidence adduced by the Government was insufficient to support his conviction. The

Government's chemist testified that although he had performed a qualitative analysis upon the substance sold to the government agent as heroin and had found traces of heroin therein no quantitative test was performed to determine the actual amount of heroin in the substance. However, it is not necessary for the prosecution to offer evidence of the quantity of heroin involved in the substance sold. It is enough that there be sufficient evidence, direct or circumstantial, to allow the jury to find beyond a reasonable doubt that the substance involved did, in fact, contain heroin. United States v. Agueci, 310 F.2d 817, 828–829 (2 Cir. 1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963); United States v. Morello, 250 F.2d 631, 633–634 (2 Cir. 1957); Tillman v. United States, 268 F.2d 422, 425–426 (5 Cir. 1959); Toliver v. United States, 224 F.2d 742, 745 (9 Cir. 1955); Chin Gum v. United States, 149 F.2d 575, 576–577 (1 Cir. 1945). We cannot say that the testimony by the chemist of the results of the qualitative examination was an insufficient basis for the jury to find that the appellant sold heroin.

Finally, appellant advances the strange contention that the events of January 24–25, 1966, when, approached by Allevo, he obtained heroin for the government agents, were events so controlled by the Government that they occurred during a period when he was focused upon as a particular suspect and when he was subjected to an "accusatory" process. He claims therefore that he was then entitled to, but was denied, the assistance of counsel.[4] There is no merit

---

preme Court has decided that in serious crimes an accused's federally guaranteed Sixth Amendment right to trial by an impartial jury is a fundamental right and hence binding upon the states through the due process clause of the Fourteenth Amendment. Duncan v. State of Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L. Ed.2d 491 (1968). In the rural areas of our circuit the county sheriff or local representative of the state constabulary is a customary prosecution witness in state case after state case and because of limited populations from which competent

jurors may be drawn often is a witness before the same jurors in similar cases and not infrequently at the same term of nisi prius court.

4. The trial in this case was commenced March 24, 1966, before Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) was handed down by the Supreme Court on June 13, 1966, and Escobedo rather than Miranda controls the present case. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

to this contention. A person is not entitled to the assistance of counsel while committing his crime. Garcia v. United States, 364 F.2d 306 (10 Cir. 1966); Gascar v. United States, 356 F.2d 101 (9 Cir. 1965); Grier v. United States, 345 F.2d 523 (9 Cir. 1965).

The conviction is affirmed.