**UNITED STATES of America, Appellee,**

v.

**Larry BROWN, Appellant.**

**No. 293, Docket 80–1092.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 28, 1980.

Decided March 16, 1981.

Rehearing and Rehearing In Banc
Denied April 27, 1981.

Jerome F. O'Neill, Asst. U. S. Atty., D. Vermont, Rutland, Vt. (William B. Gray, U. S. Atty., Rutland, Vt., P. Scott McGee, State's Atty., Hyde Park, Vt., of counsel), for appellee.

William A. Nelson, Appellate Defender, Montpelier, Vt. (James Dumont, of counsel, Catherine McNamara, Danforth Cardozo, III, on brief), for appellant.

Before MOORE, MULLIGAN and OAKES, Circuit Judges.

MOORE, Circuit Judge:

Larry Brown, convicted of robbing a branch of the Chittenden Trust Company in Colchester, Vermont on September 24, 1979 after an eight day trial before the Honorable Albert W. Coffrin, United States District Judge for the District of Vermont and a jury, appeals his conviction. The indictment charged Brown with taking by force, violence and intimidation a sum of money in excess of a thousand dollars. Brown was sentenced to 42 months.

On appeal Brown characterizes his defense as one of "mistaken identity" (Appellant's Br. p. 3). Since "identity" is a factual question, it is necessary to examine the record to ascertain the facts presented to the jury and to determine whether there was reversible error in their admission.

## I.

On September 24, 1979 a tall thin black male wearing a ski mask entered the bank a little after noon and by claiming to have explosives with which he would blow them up, received from the tellers such money as was available to them, namely, a sum somewhat in excess of $1000. The tellers inserted the money into a brown paper bag presented by the robber together with a "security pack".[1] The robber left the bank and apparently dropped the bag in a wooded area where the money and the security pack were later recovered. The "explosives", consisting of two red emergency road flares bound with masking tape, and two batteries with blue wire attached, were also found. The money was drenched in the dye.

Because of the ski mask which the robber was wearing, identification had to be limited to such characteristics as were visible, namely, his apparel, visible facial characteristics (very white teeth and very black skin) and the sound of the robber's voice.

Within an hour of the robbery a telephone call was made to the bank by a person claiming to be "Alex Smith" who inquired as to whether the bank had been robbed. A detective, Bruce Parizo of the Colchester police force to whom the call was referred, testified that the voice he heard sounded the same as that of the robber.[2]

On September 26, F.B.I. Agent Zabowsky received a telephone call from a person who said he was Larry Brown; that he had heard the F.B.I. was looking for him in connection with a bank robbery in Colchester; that he had access to a green truck and

1. A security pack is designed to release tear gas and a red dye which is designed to aid in identifying the robber.

2. Detective Parizo prepared a report of his activities.

that he (Brown) did not want to go to jail. Zabowsky asked him to come into his office so that "we could perhaps eliminate him as a suspect in the case". Brown agreed to come "at one o'clock that Wednesday" but would not say where he was calling from; neither did he appear. In the course of his conversation, Brown said "Oh, what am I going to use as an alibi".

Shortly before the robbery Brown had been seen driving a green pick-up truck with dual rear wheels and an unusual superstructure. After the robbery a search of this truck revealed Brown's wallet under the seat. In addition the hoax explosive had been made with wire, one end of which matched wire found in the room occupied by Brown, as were red flares similar to those used in making the device. As to voice identification, several witnesses testified that Brown's voice sounded like the voice of the robber.

## II.

■ Brown challenges his conviction by claiming that the police report made by Detective Parizo with regard to the telephone call received at the bank immediately after the robbery was wrongfully withheld by the Government under F.R.Crim.Pro. 16(a)(1). We do not find merit in this contention. Even if Parizo's report should have been delivered to the defense (as to which there is considerable doubt), defense counsel were aware of the call a week before Parizo testified regarding a voice comparison, and thus suffered no prejudice.

■ Defense counsel further charges that the Government's conduct in the case amounted to an attempted "suppression" of exculpatory evidence which would be given by the testimony of a witness, Mrs. Helen Green. Brown claims that the Government knew that Mrs. Green, who lived in the area of the bank and had seen a black male driving an unusual green truck on the day of the robbery, had described a driver different from the defendant. The Government, because Mrs. Green suffered from impaired vision as a result of detached retinas and a cataract operation and had gone to Florida at the time of the trial, decided not to call her as a witness. However, at the request of Brown's counsel and on the basis of a Government subpoena, Mrs. Green attended the trial and testified. There is no foundation for the defendant's charge of "suppression" and the trial court properly denied defense counsel's motion to dismiss on this ground.

■ Brown contends that an in-court voice identification, which was only one of the many items of evidence connecting Brown with the bank robbery, violated his constitutional right to assistance of counsel and due process. During the trial one of the tellers (Elaine Greenfield) testified that the robber said "Give me your money, all your money, or I am going to blow you up". At the end of the Government's examination the prosecutor asked the Court to require Brown to state before the jury the words attributed to him, *i. e.*, "Give me your money or I am going to blow you up". The witness then testified that his voice sounded very much like that of the robber. Since the robber had disguised his facial features by wearing the ski mask, voice identification was appropriate. The identification was made in the presence of defense counsel who had ample opportunity to cross examine the witness. Moreover, counsel was advised in advance in judge's chambers that this procedure would be employed. He thus had the opportunity to mitigate any suggestiveness by requiring another person to speak or changing the text of what was spoken. In view of these circumstances, we find no constitutional infirmity in the procedure employed.

Finally, Brown asserts reversible error by the trial court in not excusing for cause a potential juror, Edith Gonyaw. Voir dire examination revealed that she was employed by the Chittenden Trust Company but at a branch in a different part of the State from the one robbed. The trial judge elicited responses from Mrs. Gonyaw that she would base her decision upon the evidence presented and that her employment with the Chittenden Trust Company would not affect her judgment or incline her to

give the testimony of witnesses employed by the bank greater weight. Defendant's counsel did not follow up the opportunity to pose additional questions to probe the possibility of partiality. Although the Judge declined to excuse this juror for cause, she was excused when defense counsel exercised a peremptory challenge. Failure to excuse for cause, argues Brown, deprived him of a peremptory challenge. This, he claims, is a ground for reversal.

■ How this challenge would have been exercised and the benefits, if any, to Brown's defense are unknown. No claim is advanced that the jury which ultimately did serve was incapable of a fair and impartial appraisal of the facts. The fact that Mrs. Gonyaw did not serve on the jury also makes attacks upon the extent of her partiality academic. Brown's contention would require an appellate court to engage in speculation regarding the possible consequences of the defense having an additional peremptory challenge, when no actual prejudice has been proved.

Even if we were to assume that it might have been better had the trial judge excused Mrs. Gonyaw for cause, it is the function of the reviewing court to decide whether an error is sufficient to have adversely influenced the jury in their determination of their verdict. The "harmless error" doctrine came into being to enable courts to place such errors in proper perspective in relation to the entire trial. In almost every trial of any duration a microscopic examination of the record will reveal some errors— technical or otherwise. With the benefit of the entire record, a reviewing court can better make a determination as to whether an error rises to a reversible level. Every asserted error does not require a new trial. The absence of proof here that the jury that heard Brown's case was in fact partial precludes the defendant from successfully claiming a deprivation of due process.

Since Mrs. Gonyaw did not serve as a juror, there was no way in which her views could influence the jurors who passed upon Brown's innocence or guilt. Brown was deprived of one peremptory challenge.

How loss of this challenge would have affected the case would only be speculation. The issue is: was the jury ultimately selected fair and impartial? No proof has been presented or even suggested that casts any doubt on the conclusion that Brown was convicted by a fair and impartial jury.

■ Brown, however, refers us to a bank robbery case in another Circuit in which failure to excuse two jurors for cause was held to be reversible error. In *United States v. Allsup*, 566 F.2d 68 (9th Cir. 1977), the failure to excuse for cause two prospective jurors who worked as tellers at different branches of the bank that was robbed was held to be error. The court presumed bias on the part of these jurors because of their employment relationship with the bank and the reasonable apprehension of violence from bank robbers on the part of bank employees. "The potential for substantial emotional involvement" which would affect impartiality is the test for determining whether a juror should be removed for cause. 566 F.2d at 71. This Circuit has generally relied on the trial court's discretion, absent clear abuse, in ruling on challenges for cause in the empaneling of a jury, *United States v. Ploof*, 464 F.2d 116, 118 n.4 (2d Cir.), *cert. denied*, 409 U.S. 952, 93 S.Ct. 298, 34 L.Ed.2d 224 (1972); *accord, United States v. Murray*, 618 F.2d 892, 899 (2d Cir. 1980). In order for a trial judge's determination of a juror's impartiality to be set aside there must be shown "manifest" prejudice. *Reynolds v. United States*, 98 U.S. 145, 156, 25 L.Ed. 244 (1878).

■ In *Mikus v. United States*, 433 F.2d 719 (1970), this court declined to find that certain occupations or relationships *per se* constituted grounds for a prospective juror's dismissal. Specifically, the court found that in a bank robbery case the wife of a bank board chairman, a former local police officer and the wife of a state police officer (who would hear testimony from other state troopers) should not be dismissed from the jury for cause. The court chose not "to create a set of unreasonably constricting presumptions that jurors be excused for

cause due to certain occupational or other special relationships which might bear directly or indirectly on the circumstances of a given case, where, as here, there is no showing of actual bias or prejudice". 433 F.2d at 724.

On these bases we choose not to follow *United States v. Allsup, supra.* Consistent with our decision in *Mikus v. United States, supra,* we do not wish to institute a series of presumptions of implied bias in other employment or familial relationships which might affect a juror's impartiality. To do so would burden the courts needlessly with a responsibility of endless speculation on the presumptive bias of potential jurors.

Further, we do not find in the instant case the manifest prejudice which would require reversal in this Circuit. Appellant has made no showing of actual bias or prejudice on the part of Edith Gonyaw. A defendant must "raise a contention of bias from the realm of speculation to the realm of fact". *Mikus v. United States, supra,* at 724, quoting *United States v. Dennis,* 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734. Defendant's counsel here, as in *Mikus,* was given the opportunity to prove the contention that there was actual bias on the prospective juror's part. This opportunity was not pursued. Thus the trial court cannot be found to have committed error by not finding bias.

The judgment of the district court is affirmed.

OAKES, Circuit Judge (dissenting):

I dissent.

The majority holds that an in-court voice identification made in the presence of the jury was constitutionally proper. The majority justifies its holding on the following bases: (1) because the robber was disguised, voice identification was appropriate; (2) defense counsel was in the courtroom and had an opportunity to cross-examine the witness; (3) counsel was advised in advance that the in-court voice identification would take place and failed to mitigate the sug-

gestiveness of this procedure by requiring another person to speak or by changing the text of what was spoken. I find it difficult to fathom this reasoning.

First, that the robber disguised himself with a ski mask is an argument for permitting a voice identification; it is not an argument for permitting either a suggestive or a prejudicially conducted identification procedure. Second, that the identification was made in the presence of defense counsel who could cross-examine the witness can be said of any courtroom identification. But it is of no avail to a defendant that his counsel can cross-examine an identification witness after a suggestive and prejudicial identification has been made. Third, although it is true that counsel was "advised in advance" that this procedure would be employed, the record indicates that he was flatly *denied* the opportunity to mitigate suggestiveness either by having other persons also speak or by changing the words spoken.

At a bench conference during the trial, the prosecutor said: ". . . in the context of the [identification] witness' testimony, I would like to order Mr. Brown to get up and state 'Give me your money or I am going to blow you up'—so the members of the jury can hear what his voice sounds like." Defense counsel replied:

I would strenuously object. . . . [S]imply having the defendant say that in front of the jury is going to be very prejudicial. . . . The problem is suggestivity. By simply having this in-court proceeding, in front of the jury, number one, the government is going to be raising an inference to the jury, simply by having him testify, that it is the guy. . . . I think if the procedure is going to be done it should be done out of the hearing of the jury, and then allow the witness to testify as to whether or not she had any opportunity to make any voice identification. I think it is akin to a show-up situation.

But the court rejected counsel's argument as to suggestiveness based upon the "show-

up" aspect of the procedure.[1] Counsel then specifically objected to the text of what was to be spoken. Counsel stated:

> The other part is the prejudicial effect of having the defendant utter those words in front of the jury alone.... [W]e would ask the Court to require the defendant to say something other than "give me all the money"—something like "it is snowing outside"—"my name is Larry Brown, I am from Burlington."

However, the court denied this objection as well.

I do not know how counsel could have made more clearly his objections both to the inherent suggestiveness of the proposed voice identification procedure and to the prejudicial effect of having the defendant speak the very words in front of the jury—"give me your money or I am going to blow you up"—that the witness testified the robber had used. In my view, the court erred in not sustaining the objections.

There are instances in which in-court identifications, or other similar procedures, are so suggestive that they constitute prejudicial error and require a new trial. For example, in *United States v. Warf*, 529 F.2d 1170, 1174 (5th Cir. 1976), the prosecutor called a key witness to identify the defendant as the person who had made incriminating statements to the witness regarding a bank robbery. During direct examination, the prosecutor assisted the witness in this identification both verbally and by pointing. The court found this behavior to be completely inappropriate and, because the witness' testimony was critical, ruled that this and another error at trial were prejudicial. In another series of cases, *see, e. g., Gaito v. Brierley*, 485 F.2d 86, 88–89 (3d Cir. 1973); *Bentley v. Crist*, 469 F.2d 854, 856 (9th Cir.

1972); *Hernandez v. Beto*, 443 F.2d 634, 636–37 (5th Cir.), *cert. denied*, 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971), courts have held that compelling a defendant to appear before a jury in his prison clothes unconstitutionally infringes his due process right to be presumed innocent until proven guilty. The problem in each of those cases, of course, was that the very sight of the defendant in prison garb suggested to the jury that he was guilty of a crime. *See also United States v. Roth*, 430 F.2d 1137, 1140–41 (2d Cir. 1970) (held erroneous, though harmless, to permit a witness to walk through the courtroom during a recess to see if he could identify the individual who had operated a mail fraud scheme; "when a walk through occurs ... more likely than not, the defendant will be sitting at the counsel table, the very place the witness would look to find him"), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 633 (1971).[2]

Here, we have the worst aspects of both the *Warf* and the "prison garb" cases. In arranging for Brown alone to stand up in court to speak, the prosecutor in the instant case sought to provide the same type of assistance to the witness that the prosecutor provided in *Warf*. The prosecutor here could have contacted defense counsel in advance of the trial and arranged a non-suggestive voice identification procedure. Alternatively, the court could have ordered the witness, during the trial, to listen to several voices and then attempt to identify the one belonging to the robber.

Beyond this, by having the defendant utter the threatening and menacing words that the robber had allegedly used, the Government, as in the "prison garb" cases, gave the defendant an aura of criminality,

---

1. The court refused to accept the alternative procedure suggested by the defense of having the witness blindfolded and asked to choose from among several voices.

2. To be sure, there are instances in which potentially unconstitutional in-court identifications are permitted because a confrontation between the witness and the defendant had not been anticipated or arranged by the prosecutor. *See, e. g., United States v. Gentile*, 530 F.2d

461, 468 (2d Cir.) *cert. denied*, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); *United States v. Kaylor*, 491 F.2d 1127, 1131–32 (2d Cir. 1973), *modified on other grounds*, 491 F.2d 1133 (2d Cir. 1974) (en banc), *vacated on other grounds sub nom., United States v. Hopkins*, 418 U.S. 909, 94 S.Ct. 3201, 41 L.Ed.2d 1155 (1974). But in the instant case, the prosecutor brought about the confrontation between witness and defendant.

thus providing a strong suggestion to the jury of his guilt. It is hard for me to conceive of a more prejudicial method of establishing a voice identification. Only if the jury had gone down to the bank and watched the defendant put on a ski mask, wave a toy gun, and shout "Give me your money or I'm going to blow you up," could Brown have been worse off. I know of no case—certainly neither the Government in its brief nor the majority in its opinion has found one—which justifies the use of an in-court identification procedure as suggestive and prejudicial as the one used here.

Without belaboring this dissenting opinion, I would only add a comment on the conflict between circuits created by the majority's holding that a juror who was a bank teller employed in a branch of the very bank that was robbed may sit on the case, once having said that she felt no prejudice. This court has long recognized that a distinction must be drawn between "actual bias" and "implied bias," a distinction which led Judge Waterman to write in *United States v. Haynes,* 398 F.2d 980, 984 (2d Cir. 1968) (citation omitted), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 124 (1969):

> The question of implied bias remains. In determining whether a prospective juror should be excluded on this ground his statements upon voir dire are totally irrelevant; a person "may declare that he feels no prejudice in the case; and yet the law cautiously incapacitates him from serving on the jury because it suspects prejudice, because in general persons in a similar situation would feel prejudice."

And I believe that the Ninth Circuit, in *United States v. Allsup,* 566 F.2d 68 (9th Cir. 1977), a case on all fours with the instant one, provides an eminently reasonable explanation for its conclusion that employees of a branch office of the bank that was robbed would probably be biased.

Based on the fact that "[p]ersons who work in banks have good reason to fear bank robbery because violence, or the threat of violence, is a frequent concomitant of the offense," Judge Hufstedler's opinion in *Allsup* held that "[t]he employment relationship coupled with a reasonable apprehension of violence by bank robbers leads us to believe that bias of those who work for the bank robbed should be presumed." *Id.* at 71–72; *see United States v. Panza,* 612 F.2d 432, 441 (9th Cir. 1979), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980). Indeed, the situation in the instant case was exacerbated because the mechanics and timing of the bank alarm system were to be the subject of heated examination and argument, and the juror in question conceded her familiarity with the operation of the security system.

In short, I find the Ninth Circuit's analysis preferable to the one enunciated by this circuit for the first time today. Furthermore, I am disturbed that defense counsel had to use one of Brown's peremptory challenges to remove this juror, and was forced to leave on the jury a person who had seen a newspaper photograph of the defendant in handcuffs. The denial or impairment of the right to challenge peremptorily is reversible error, even without a showing of prejudice. *See, e. g., Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965); *United States v. Turner,* 558 F.2d 535, 538–39 (9th Cir. 1977); *United States v. Nell,* 526 F.2d 1223, 1229 (5th Cir. 1976).

For all these reasons, I would reverse and remand for a new trial.