UNITED STATES of America

v.

Amable GARCIA, Miguel Cabrera, Jose Domingo, Carlos Reinoso, Defendants,

Jose Dominguez, a/k/a "Jose Domingo", Miguel Cabrera and Amable Garcia, Defendants–Appellants.

Nos. 529, 539 and 1000, Dockets 90–1313, 90–1366 and 90–1367.

United States Court of Appeals, Second Circuit.

Argued Feb. 8, 1991.

Decided June 6, 1991.

**650**

Sam A. Schmidt, New York City (Barocas & Schmidt, of counsel), for defendant-appellant Dominguez.

Collen P. Cassidy, New York City (Legal Aid Soc., of counsel), for defendant-appellant Cabrera.

David Goldstein, New York City (Goldstein, Weinstein & Fuld, of counsel), for defendant-appellant Garcia.

Ira M. Feinberg, Asst. U.S. Atty., S.D. N.Y. (Otto G. Obermaier, U.S. Atty., Lisa Margaret Smith, Daniel C. Richman, Asst. U.S. Attys., S.D.N.Y., of counsel), for appellee.

Before LUMBARD, NEWMAN and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendants-appellants Jose Dominguez, Miguel Cabrera, and Amable Garcia appeal from judgments of conviction entered in the United States District Court for the Southern District of New York (Robert P. Patterson, *Judge*). The underlying indictment charged the defendants, in Count One, with conspiracy to violate the narcotics laws of the United States, in violation of 21 U.S.C. § 846 (1988) and, in Count Two, with possession with the intent to distribute more than 500 grams of cocaine within 1,000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1) (1988), 841(b)(1)(B) (1988) and 845a(a) (1988). Following a two week jury trial, Garcia was convicted on both counts; Cabrera was convicted on Count One, the conspiracy count, but was acquitted on Count Two; and Dominguez was convicted on Count Two, the possession count, but was acquitted on Count One.

On appeal, all three defendants contend that they were deprived of their sixth amendment right to trial by an impartial jury as a result of the district court's refusal to excuse for cause thirteen members of the venire who had just completed jury service in another narcotics trial at which one of the Government's witnesses in the underlying action had testified. Four of these individuals served as jurors in this action. Defendants Dominguez and Garcia also challenge certain evidentiary rulings made by the court during the course of the trial. Dominguez also raises claims concerning the Government's failure to disclose that two Government witnesses had been shown his photograph. Finally, defendant Garcia contends that the district court improperly applied the Sentencing Guidelines.

For the reasons set forth below, the judgments of conviction are affirmed.

## BACKGROUND

The Government's evidence at trial showed that in early August 1989, two Drug Enforcement Administration ("DEA") informants, Mario Perez and Freddie Diaz, met with defendants-appellants Amable Garcia and Miguel Cabrera to discuss the possible purchase of cocaine from Garcia. Diaz asked Garcia if Garcia could supply him with three kilograms of cocaine. Garcia agreed to supply the drugs, and the two negotiated the price. The men subsequently proceeded to "Amable's Restaurant" to await delivery of the drugs. "Amable's," located at 935 East 163rd Street in the Bronx, was owned by defendant Garcia. After waiting some time at the restaurant, the informants were signalled by DEA agents that they should leave. Accordingly, Perez told Garcia that the deal was taking too long and would have to be put off to another time.

A few days later, Diaz returned to Amable's Restaurant accompanied by another DEA informant, Gerson Ferrer. Diaz told Garcia that Ferrer was a "major drug dealer" in Washington, D.C., and that he would proceed with the transaction. So informed, Garcia asked Ferrer if he wanted to buy the cocaine that day. Ferrer replied that he had no money with him, but that he would return to complete the transaction. On August 7, 1990, Ferrer phoned Garcia and arranged to complete the deal the following day. The next day, Ferrer, accompanied by Perez, returned to Amable's Restaurant. Garcia and Cabrera, defendant-appellant Jose Dominguez, and defendant Carlos Reinoso, who actually supplied the cocaine, were waiting for them in front of the restaurant. As Ferrer arrived, Dominguez, who had accompanied Reinoso to the restaurant, told Ferrer that he would like the cocaine he was about to purchase. Ferrer stated that he had enough money to buy three kilograms of cocaine. Garcia indicated, however, that he could supply only one kilogram at that time, and instructed Cabrera to enter the restaurant and get the cocaine.

The rest of the men soon entered the restaurant and proceeded to a room on the second floor. Cabrera was leaving the room as they entered. Inside, a package, covered by a pair of trousers, rested on a table. Garcia removed the trousers, revealing a "brick" of cocaine tightly wrapped in brown plastic tape. Cabrera returned to the room and gave Garcia a knife to cut through the tape. Garcia then opened the package and allowed Perez to test the cocaine. After testing the cocaine, Perez agreed that he and Ferrer would take the one kilogram. Perez then left the room, stating that he had to go outside to get the money. At that point, a team of DEA agents, including Special Agent John McKenna, arrived and arrested Garcia, Cabrera, Dominguez, and Reinoso.

The Government filed a two count indictment against the defendants. Count One charged the defendants with conspiracy to violate the narcotics laws of the United States in violation of 21 U.S.C. § 846; Count Two charged them with possession with the intent to distribute more than 500 grams of cocaine within 1,000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 845a(a). Before trial, defendant Reinoso pleaded guilty to the conspiracy count and was sentenced to sixty-six months in prison. Reinoso has not appealed from his conviction or sentence. Following a two week jury trial before Judge Robert P. Patterson, defendant-appellant Garcia was convicted on both counts and was sentenced to ninety-seven months in prison and eight years of supervised release. Defendant-appellant Cabrera was convicted on Count One, the conspiracy count, and was sentenced to eighty months in prison and four years of supervised release. Defendant-appellant Dominguez was convicted on Count Two, the possession count, and was sentenced to a sixty-month term of imprisonment, followed by eight years of supervised release, and was also directed to perform fifty hours of community service upon his release. This appeal followed.

## DISCUSSION

### I. The Jury Bias Claim.

In response to questions posed by Judge Patterson during voir dire, it was revealed

652

that thirteen venirepersons had just completed jury service in another narcotics trial at which DEA Special Agent John McKenna, who was scheduled to testify in the instant case, had testified. Judge Patterson proceeded to question each of these individuals in open court regarding his or her impartiality. These prospective jurors stated unequivocally that their prior jury service would not affect their ability to evaluate fairly and impartially McKenna's testimony in the present case. To assure that the prior jury service had not biased the thirteen potential jurors, the court, with counsel present, also examined each of them *in camera,* asking questions drafted by defense counsel. Several of the prospective jurors indicated that they had formed a favorable opinion concerning the credibility of McKenna's testimony. Nevertheless, they again stressed that they could fairly and impartially evaluate McKenna's testimony if selected as jurors.

At the close of voir dire, defense counsel challenged for cause the members of the venire who had served as jurors in the prior trial. The district court refused to excuse the jurors, stating: "I have listened to them and observed them and they don't appear to me ... to have a fixed viewpoint." Ultimately, four of these venirepersons were selected for service in the underlying action.

The primary issue on appeal is whether the district court denied appellants their sixth amendment right to trial by an impartial jury by refusing to excuse for cause those members of the venire who had heard McKenna's testimony in the prior proceeding. Appellants contend that, regardless of the jurors' responses during voir dire and during the *in camera* interviews, the district court erred by not finding the jurors biased as a matter of law. Alternatively, appellants contend that the jurors' responses demonstrated actual bias.

A. *Implied Bias.*

■ We last considered this issue twenty-three years ago in *United States v. Haynes,* 398 F.2d 980 (2d Cir.1968), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 996, 22

L.Ed.2d 124 (1969). In *Haynes,* defense counsel moved to strike for cause thirteen venirepersons who had previously served as jurors in a narcotics case during which the same government witnesses testified who were scheduled to testify against defendant Haynes in his narcotics trial. *Id.* at 983. Haynes contended, as do the appellants here, that the prospective jurors were incapable of being impartial because they had found the government's witnesses credible in the prior case. *Id.* The district court refused to excuse these venirepersons for cause. On appeal, we held that in cases where members of the venire are challenged on the basis of prior jury service at a trial involving similar but unrelated offenses, at which the same government witnesses testify, actual bias must be *proved,* not implied. *Id.* at 985. *Accord, United States v. Carranza,* 583 F.2d 25, 28–29 (1st Cir.1978); *United States v. DeMet,* 486 F.2d 816, 819 (7th Cir.1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974); *Johnson v. United States,* 484 F.2d 309 (8th Cir.), *cert. denied,* 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973); *Government of the Virgin Islands v. Williams,* 476 F.2d 771, 773 (3d Cir. 1973); *United States v. Stevens,* 444 F.2d 630, 631–32 (6th Cir.1971); *cf. Smith v. Phillips,* 455 U.S. 209, 215–19, 102 S.Ct. 940, 944–47, 71 L.Ed.2d 78 (1982). *But cf. United States v. Jefferson,* 569 F.2d 260, 262 (5th Cir.1978). We see no reason to depart from our decision in *Haynes.* We believe that jurors can and do recognize that a determination regarding a witness' credibility at one trial, under one set of circumstances, is of little moment when that witness' testimony is evaluated, and perhaps challenged by the testimony of new defense witnesses, in the changed environment of a later, independent case. *See Haynes,* 398 F.2d at 985. Accordingly, we hold that appellants' challenges for cause based upon the venirepersons' exposure to McKenna's testimony during prior jury service must be based on a showing of actual bias.

B. *Actual Bias.*

■ Appellants next contend that the venirepersons' responses to questions posed during voir dire and during the *in*

*camera* interviews demonstrate actual bias and that the district court therefore erred by refusing to find bias and, consequently, to excuse the jurors for cause.

■ In empaneling a jury, a district court has a "duty to determine the question of actual bias, and [ ] broad discretion in its rulings on challenges therefor." *Dennis v. United States*, 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950). Indeed, because the district judge is in "the best position to evaluate the juror's demeanor and to determine, by the juror's answers to the judge's questions whether the juror could fairly and impartially hear the case," *United States v. Ploof*, 464 F.2d 116, 118 (2d Cir.), *cert. denied sub nom. Godin v. United States*, 409 U.S. 952, 93 S.Ct. 298, 34 L.Ed.2d 224 (1972), a district judge's finding that a jury is fair and unbiased must be upheld absent "clear abuse" of that discretion. *Id.* at 118, n. 4; *see also United States v. Towne*, 870 F.2d 880, 885 (2d Cir.), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989); *United States v. Moon*, 718 F.2d 1210, 1219 (2d Cir.1983), *cert. denied*, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984); *United States v. Brown*, 644 F.2d 101, 104 (2d Cir.), *cert. denied*, 454 U.S. 881, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981).

In the instant case, Judge Patterson thoroughly and conscientiously fulfilled his duty to determine whether the jurors were biased. With respect to their prior jury service, the prospective jurors stated unequivocally that they could evaluate McKenna's testimony fairly and impartially in the instant case. Although several jurors admitted during the *in camera* interviews to having formed a favorable opinion concerning McKenna's credibility in the prior trial, they reiterated that they could appraise McKenna's testimony in the present action with an open mind based on the facts before them. These unwavering affirmations of impartiality, combined with the district judge's favorable evaluation of the prospective jurors' demeanor, provided ample grounds upon which to find that they were not biased. *See Dennis*, 339 U.S. at 171, 70 S.Ct. at 523 ("[O]ne who is

trying as an honest man to live up to the sanctity of his oath [as a juror] is well qualified to say whether he has an unbiased mind...."); *Haussener v. United States*, 4 F.2d 884, 886 (8th Cir.1925) (Court found jurors to be unbiased where, although admitting on voir dire to having formed an opinion as to the credibility of prosecution witnesses in a prior case, the jurors explained that they could evaluate impartially the same witnesses' testimony in defendant's case). Accordingly, the district court did not abuse its broad discretion by refusing to excuse the challenged jurors for cause.

## II. The Evidentiary Rulings.

### A. *The Cross–Examination of Dominguez Regarding Prior Cocaine Use.*

■ On direct examination, Dominguez testified that he had carried the package containing the cocaine to Amable's Restaurant and that, upon being summoned to the room on the second floor, he saw the open package and the white powder it contained. He further testified, both on direct and cross-examination, that he was unaware that the powder was cocaine. Consequently, the district court permitted the Government to elicit testimony from Dominguez on cross-examination regarding his familiarity with and prior use of cocaine. On appeal, Dominguez contends that the district court erred by permitting such cross-examination.

■ Central to the proper operation of the adversary system is the notion that "when a defendant takes the stand, the [G]overnment be permitted proper and effective cross-examination in an attempt to elicit the truth." *United States v. Havens*, 446 U.S. 620, 626–27, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559 (1980). Thus, where a defendant testifies on direct examination regarding a specific fact, the prosecution may prove on cross-examination " 'that [the defendant] lied *as to that fact.*' " *United States v. Garcia*, 900 F.2d 571, 575 (2d Cir.) (citation omitted) (emphasis in original), *cert. denied*, —— U.S. ——, 111 S.Ct. 169, 112 L.Ed.2d 133 (1990); *see also United States v. Greschner*, 802 F.2d 373, 383

(10th Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987); *United States v. Bufalino,* 683 F.2d 639, 647 (2d Cir.1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983). Therefore, once Dominguez testified that he had no idea that the white powder was cocaine, he opened the door for the Government to impeach his testimony by establishing on cross-examination that he was familiar with and indeed had used cocaine as recently as the day before his arrest. *See, e.g., Garcia,* 900 F.2d at 575; *Bufalino,* 683 F.2d at 647. This evidence, which exposed Dominguez' lack of candor regarding his knowledge of the package's contents, was particularly relevant in light of Dominguez' attempt to portray himself as an unwitting bystander. Under these circumstances, the district court did not abuse its discretion in permitting cross-examination of Dominguez concerning his prior cocaine use. *See Bufalino,* 683 F.2d at 647; *United States v. Lanza,* 790 F.2d 1015, 1020 (2d Cir.), *cert. denied sub nom. Lyubarsky v. United States,* 479 U.S. 861, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986); *see also* Fed.R.Evid. 403.

### B. *Cross–Examination and Summation Regarding Garcia's Marital History.*

Appellant Garcia testified on his own behalf at trial. Attempting to portray himself as a solid citizen with a stable family life, Garcia testified that he had been married to his wife, Maria Reinoso, since 1965. On cross-examination, the Government elicited that Garcia had divorced Maria in the Dominican Republic in 1973 and had married Mariam Hernandez in the United States in 1976. The Government further established that in 1977, on the basis of his marriage to Hernandez, Garcia obtained permanent resident status. Shortly thereafter, Garcia divorced Hernandez and remarried Maria Reinoso. The Government suggested that Garcia's marriage to Hernandez had been a sham and that he had made misrepresentations to the Immigration and Naturalization Service. Garcia's attorney consented to having Garcia's INS file admitted into evidence. During its summation and rebuttal summation, the Government attacked Garcia's credibility by, among other things, referring to his INS file and to his allegedly fraudulent marriage to Hernandez. On appeal, Garcia contends that the district court erred by permitting such cross-examination. Garcia further contends that the Government improperly referred to his marital history during its summation and rebuttal summation.

■ Because Garcia testified on direct examination regarding the length and stability of his marriage to Maria Reinoso, the district court acted within its discretion in permitting the Government to elicit information on cross-examination to contradict Garcia's statements. *See, e.g., Garcia,* 900 F.2d at 575; *Bufalino,* 683 F.2d at 647.

■ Garcia's claim that the district court abused its discretion under Fed.R.Evid. 608(b) by allowing the Government to explore 13 year-old information concerning his alleged sham marriage to Hernandez, and subsequent application for permanent resident status, also fails. Given the overwhelming evidence of Garcia's guilt, any conceivable error in permitting this cross-examination was harmless. *See United States v. Schwab,* 886 F.2d 509, 514 (2d Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990); *United States v. Lyles,* 593 F.2d 182, 196 (2d Cir.), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979).

■ Garcia's claim for a new trial based on the alleged impropriety of the Government's summation and rebuttal summation is similarly unavailing. Even assuming that the Government's references to Garcia's alleged sham marriage were improper, they plainly did not result in "substantial prejudice" to Garcia such that he was denied a fair trial. *See United States v. Tutino,* 883 F.2d 1125, 1136 (2d Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990). To determine whether allegedly improper summation statements caused substantial prejudice, " 'we examine the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of the con-

viction absent the improper statements.'" *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir.1990) (citation omitted). Where, as here, the statements were not egregious and the evidence of Garcia's guilt, apart from the allegedly improper prosecutorial comments, was clearly sufficient to convict Garcia, any claim that he has suffered "substantial prejudice" must be rejected. *See id.* at 343–44; *see also United States v. Young*, 470 U.S. 1, 11–12, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1 (1985).

III. The Government's Failure to Disclose Photographic Identification Evidence to Dominguez.

■ In response to a pretrial discovery request made by Dominguez, the Government stated that no photographic arrays or show-ups had been conducted with respect to Dominguez. However, in the midst of informant Perez' testimony at trial, and after informant Ferrer had testified, it was revealed that the Government had shown Ferrer and Perez a photograph of Dominguez. Dominguez promptly requested an evidentiary hearing to determine if the informants' viewing of the photograph had tainted their trial testimony and in-court identification of Dominguez. Dominguez also requested that Ferrer be recalled for further cross-examination. The district court denied both requests. On appeal, Dominguez contends that the Government's failure to supply the photographic evidence denied him a fair trial. He further argues that the district court erred by denying his requests for an evidentiary hearing and for further cross-examination of Ferrer.

■ The Government admits that it should have disclosed the photographic identification evidence before trial pursuant to its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, the district court found that the Government had not intentionally withheld the information. The Government's inadvertent failure to disclose impeachment evidence does not automatically require reversal of a conviction unless the evidence is material, that is "if

there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Underwood*, 932 F.2d 1049, 1052 (2d Cir.1991) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.)); *see also United States v. Bejasa*, 904 F.2d 137, 140 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 299, 112 L.Ed.2d 252 (1990)).

Dominguez argues that the photographic evidence would have enabled him to impeach Ferrer's and Perez' in-court identification. This argument is unpersuasive. Dominguez had ample opportunity to cross-examine Perez after the Government's use of the photograph was revealed. Ferrer's identification of Dominguez was never in doubt, as he and Dominguez had spent approximately fifteen minutes together at Amable's Restaurant prior to Dominguez' arrest. More importantly, Dominguez' identity was not an issue at trial. Not only did Dominguez' direct testimony place him at the scene on the day of the cocaine transaction, but he was arrested standing next to the open package of cocaine. Under these circumstances, the Government's failure to disclose the photographic identification evidence in no way affected the outcome of the trial. *See Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383–84.

For the same reasons, Judge Patterson did not abuse his discretion in denying Dominguez' request for an evidentiary hearing, *see United States v. Ofarril*, 779 F.2d 791, 792 (2d Cir.1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986), or in refusing to recall Ferrer for further cross-examination. *See Bejasa,* 904 F.2d at 140–41.

IV. Garcia's Challenge To His Sentence.

■ Defendant-appellant Garcia contends that the district court erred in improperly applying the United States Sentencing Guidelines to calculate his sentence. Garcia first argues that the court erred in finding him to have been an organizer of the drug transaction and, consequently, in making a two-level upward ad-

justment pursuant to Section 3B1.1(c) of the Sentencing Guidelines. Section 3B1.1(c) of the Guidelines provides for a two-level increase where "the defendant was an organizer, leader, manager, or supervisor in any criminal activity...." *See* U.S.S.G. § 3B1.1(c) (1990). A district court's finding under section 3B1.1 regarding a defendant's role in a criminal activity is a factual determination that will not be overturned unless "clearly erroneous." *See United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 183 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Lanese,* 890 F.2d 1284, 1291 (2d Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990).

Garcia contends that he was only a middleman and that his co-defendant, Carlos Reinoso, who supplied the cocaine, was the true organizer of the transaction. However, as the district court found, there was no evidence before it indicating that Reinoso was an organizer. Moreover, even if Reinoso were an organizer, the district court would not be precluded from finding Garcia to have been an organizer as well. *See* U.S.S.G. § 3B1.1, comment (n.1) ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy."). There was ample evidence presented at trial indicating that Garcia was an organizer of the drug transaction. For example, Garcia conducted all of the negotiations with the informants concerning the price and quantity of the cocaine, found the source of supply, and largely directed the activity of the other participants on the day of the transaction. Under these circumstances, the district court's decision to impose a two-level upward adjustment based on Garcia's organizational role was not clearly erroneous. *See Rodriguez–Gonzalez,* 899 F.2d at 182–83.

Garcia also contends that the district court erred in not granting him a two-level downward adjustment pursuant to Section 3E1.1(a) of the Guidelines, which provides for such an adjustment where "the defendant clearly demonstrates a rec-

ognition and affirmative acceptance of personal responsibility for his criminal conduct...." *See* U.S.S.G. § 3E1.1(a) (1990). Without the two-level decrease, Garcia had an offense level of 30, which resulted in a sentencing range of 97–121 months. Had the court granted the two-level decrease, Garcia's offense level would have been 28, with a sentencing range of 78–97 months. The district court ultimately imposed a sentence of 97 months, which was permissible under both offense levels. The court indicated that the claimed decrease in the offense level would not have altered its sentencing determination. Under these circumstances, we "need not address the merits of [Garcia's] claimed reduction." *United States v. Colon,* 884 F.2d 1550, 1552 (2d Cir.), *cert. denied sub nom. Papathanasion v. United States,* — U.S. ——, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989); *United States v. Bermingham,* 855 F.2d 925, 931 (2d Cir.1988).

### CONCLUSION

Based on the foregoing, the judgments of conviction are affirmed.